**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AZHAR RANA, | No. 4:26-CV-01012 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**MEMORANDUM OPINION**

**JULY 22, 2026**

Plaintiff Azhar Rana filed the instant *pro se* action alleging negligence against the United States of America under the Federal Torts Claim Act (FTCA).[1] The Court will dismiss Rana's FTCA complaint because he fails to state a claim upon which relief may be granted and because his complaint, as it currently stands, is legally frivolous.

## I.    BACKGROUND

Rana currently resides in Pakistan following his deportation from the United States.[2] In April 2026, he lodged the instant FTCA complaint against the United States concerning his release from FCI Allenwood Medium (FCI Allenwood), in White Deer, Pennsylvania.[3]

---

[1]    28 U.S.C. §§ 1346(b), 2671-2680.
[2]    Doc. 1 ¶ 6.
[3]    *See generally* Doc. 1.

Despite the length and prolixity of Rana's complaint, his allegations are quite simple. He alleges that on July 25, 2024, he was released from FCI Allenwood "wearing only shoes, a T-shirt, and shorts, rather than the standard release attire such as full-length pants, a long-sleeved shirt, and a jacket suitable for the conditions at the time of release."[4] This is the entirety of the purportedly tortious conduct Rana alleges.

It appears that, immediately upon his release from FCI Allenwood, Rana was taken into custody by U.S. Immigration and Customs Enforcement (ICE) and detained that same day at Clinton County Correctional Facility.[5] Rana claims that being released in a T-shirt, shorts, and shoes (what he refers to as "the absence of proper release attire") caused him "public humiliation, exposure, and emotional distress."[6] He asserts that the BOP personnel who handled his release were negligent.[7]

Rana has moved for leave to proceed *in forma pauperis*. The Court will grant that motion and dismiss Rana's complaint under 28 U.S.C. § 1915(e)(2)(B) as frivolous and for failure to state a claim upon which relief may be granted.

---

[4]    Doc. 1 ¶ 33.
[5]    *Id.* ¶ 34.
[6]    *Id.* ¶¶ 33, 72.
[7]    *See id.* ¶¶ 50-73 (labeling sections of his complaint "Duty of Care," "Breach of Duty," and "Causation and Harm," thus indicating a claim of negligence).

2

## II.    STANDARDS OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B)(ii), a court "shall dismiss" an *in forma pauperis* case or claim "at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted[.]"[8]  This language closely tracks Federal Rule of Civil Procedure 12(b)(6).  Accordingly, courts apply the same standard of review to Section 1915(e)(2)(B)(ii) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[9]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[10]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[11]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[12]

---

[8]    28 U.S.C. § 1915(e)(2)(B)(ii).

[9]    *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).

[10]    *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).

[11]    *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

[12]    *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[13]  At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[14]  Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[15]  Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[16]  Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[17]

Because Rana proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[18]

## II.   DISCUSSION

As noted above, Rana maintains that BOP officials were negligent in the manner in which they released him from FCI Allenwood.  His FTCA complaint is deficient for multiple reasons.

---

[13]  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

[14]  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

[15]  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[16]  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[17]  *Iqbal*, 556 U.S. at 681.

[18]  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).

### A.    FTCA Claims Generally

"The FTCA offers a limited waiver of the federal government's sovereign immunity from civil liability for negligent acts of government employees acting within the scope of their employment."[19]  "[T]he FTCA does not itself create a substantive cause of action against the United States; rather, it provides a mechanism for bringing a state law tort action against the federal government in federal court.  Thus, 'the extent of the United States' liability under the FTCA is generally determined by reference to state law.'"[20]

### B.    Rana's State-Law Tort Claim(s)

Rana appears to assert a state-law tort claim of negligence.  Under Pennsylvania law, to allege the tort of negligence, a plaintiff must plead that "the defendant owed a duty of care to the plaintiff, that duty was breached, the breach resulted in the plaintiff's injury, and the plaintiff suffered an actual loss or damages."[21]

The immediately apparent problem for Rana is that he has not alleged physical injury, actual loss, or economic damages.  He avers only that he purportedly suffered "embarrassment, humiliation, degradation, and psychological

---

[19]  *Rinaldi v. United States*, 904 F.3d 257, 273 (3d Cir. 2018); *see also* 28 U.S.C. § 1346(b)(1).

[20]  *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 361-62 (3d Cir. 2001) (quoting *Reo v. U.S. Postal Serv.*, 98 F.3d 73, 75 (3d Cir. 1996)).

[21]  *Kinney-Lindstrom v. Med. Care Availability & Reduction of Error Fund*, 73 A.3d 543, 563 n.17 (Pa. 2013) (quoting *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 980 A.2d 502, 506 (Pa. 2009)).

5

distress" by being released from FCI Allenwood "in an exposed and indecent condition," *i.e.*, wearing a T-shirt, shorts, and shoes.[22]  These alleged "harms," however, are purely emotional in nature, and it is well settled under Pennsylvania law that in negligence cases, "there can be no recovery for mental suffering except it be founded upon physical injury[.]"[23]

It thus follows that the only potential state-law tort claim that could be implicated by Rana's claim of emotional distress from the BOP officials' alleged negligence is the tort of negligent infliction of emotional distress (NIED).  Under Pennsylvania law, a cause of action for NIED is actionable in circumstances where, *inter alia*, there is a "special relationship" between the plaintiff and defendant, at least insofar as that relationship encompasses "an implied duty to care for the plaintiff's emotional well-being."[24]  Pennsylvania courts have acknowledged that this cause of action "is premised upon the Restatement

---

[22]  Doc. 1 ¶ 70.

[23]  *Studebaker v. Pittsburgh Rys. Co.*, 103 A. 532, 532 (Pa. 1918); *Burgan v. City of Pittsburgh*, 96 A.2d 889, 891 (1953).

[24]  *See Toney v. Chester Cnty. Hosp.*, 36 A.3d 83, 94-95 (Pa. 2011).  It is possible that there is a fiduciary duty between FCI Allenwood and Rana as set forth in 18 U.S.C. § 4042(a).  *See* 18 U.S.C. § 4042(a); *Jones v. United States*, 534 F.2d 53, 54 (5th Cir. 1976); *Hossic v. United States*, 682 F. Supp. 23, 25 (M.D. Pa. 1987) (holding 18 U.S.C. § 4042 establishes "ordinary diligence" standard of care for prisoner negligence suits under the FTCA).  At the screening stage, the Court declines to delve into the more granular assessment of whether the "special relationship" in this case is one that encompasses "an implied duty of care for the plaintiff's emotional well-being," *Toney*, 36 A.3d at 95, like in the doctor-patient context.  Instead, the Court will assume—without deciding—that such a special relationship exists here for purposes of Section 1915(e) screening.

(Second) of Torts § 313[.]"[25]  Section 313 of the Restatement provides, in pertinent part:

(1)  If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor

(a)  should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and

(b)  from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.[26]

Naturally, a plaintiff pursuing a claim for "negligent" infliction of emotional distress must establish that the defendant's conduct was negligent.[27]

Rana's claim of NIED fails for multiple reasons.  First, Pennsylvania law strictly limits recovery on NIED claims to those plaintiffs who suffer physical injury from the emotional distress.  "Physical injury must be averred to sustain a cause of action for negligent infliction of emotional distress."[28]  The physical-injury requirement is grounded in Section 436A of the Restatement (Second) of Torts.[29]  Yet Rana has not alleged any physical injury.  His allegations of harm are

---

[25]  *Toney v. Chester Cnty. Hosp.*, 961 A.2d 192, 198-99 (Pa. Super. Ct. 2008) (en banc) (citing RESTATEMENT (SECOND) OF TORTS § 313), *aff'd by a divided court*, 36 A.3d 83 (Pa. 2011); *Armstrong v. Paoli Mem. Hosp.*, 633 A.2d 605, 608-09 & n.2 (Pa. Super. Ct. 1993) (same).

[26]  *Toney*, 961 A.2d at 198-99 (quoting RESTATEMENT (SECOND) OF TORTS § 313).

[27]  *See id.* at 199.

[28]  *Armstrong*, 633 A.2d at 609 (collecting cases); *see Toney*, 961 A.2d at 200.

[29]  *See id.*; *see* RESTATEMENT (SECOND) OF TORTS § 436A ("If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to

7

purely emotional or psychological in nature, and such harms do not satisfy Pennsylvania's pleading requirements for NIED.[30]

Rana's NIED claim also fails because he has not plausibly alleged that it was reasonably foreseeable that being released from prison in July in shorts, a T-shirt, and shoes would cause emotional distress so severe that it would inflict bodily harm (which bodily harm Rana has not alleged). As observed by Commonwealth courts and set forth in the Restatement, liability for NIED only obtains when an actor (a) "should have realized that his conduct involved an *unreasonable risk of causing the distress*" and (b) "*from facts known to him* should have realized that the distress, if it were caused, might result in illness or bodily harm."[31] And as the Restatement explains, in causing that physical harm, the actor's negligent conduct must violate a duty of care "*designed to protect another from a fright or other emotional disturbance* which the actor should recognize as involving an unreasonable risk of bodily harm[.]"[32]

Stated differently, NIED is a tort of "reasonable foreseeability" that asks whether the injury—*i.e.*, severe emotional distress resulting in physical injury—is

---

another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance.").

[30] *See Armstrong*, 633 A.2d at 609; *see, e.g.*, *Abadie v. Riddle Mem. Hosp.*, 589 A.2d 1143, 1145 (Pa. Super. Ct. 1991) (general allegations of "emotional and psychological damage" insufficient for NIED claim); *Lazor v. Milne*, 499 A.2d 369, 370, 372 (Pa. Super. Ct. 1985) (general allegations of "severe emotional distress" without resultant physical or bodily harm insufficient for NIED claim).

[31] *Id.* at 198-99 (quoting RESTATEMENT (SECOND) OF TORTS § 313(1) (emphasis added)).

[32] RESTATEMENT (SECOND) OF TORTS § 436(1) (emphasis added).

"a reasonably foreseeable result of the defendant's negligence[.]"[33]  The

requirement of foreseeability of the peculiar harm is a well-settled matter of

Pennsylvania negligence jurisprudence.[34]  Case after case, reaching back to the

1800s, admonishes that the foreseeability of the harm caused to the plaintiff is a

fundamental component of negligence law that provides necessary, societal

limitations to the scope of the duty owed.[35]

Rana, however, does not plausibly allege any such reasonable foreseeability.

Initially, the Court observes that he has not alleged how releasing a prisoner into

---

[33] *Armstrong*, 633 A.2d at 608-09.

[34] *See Griggs v. BIC Corp.*, 981 F.2d 1429, 1435 (3d Cir. 1992) (noting that foreseeability of the harm to the injured person is an "integral part" of the determination that a duty exists under Pennsylvania negligence law), *overruled in part on other grounds by Surace v. Caterpillar, Inc.*, 111 F.3d 1039 (3d Cir. 1997).

[35] *See, e.g.*, *Wood v. Pa. R.R. Co.*, 35 A. 699, 701 (Pa. 1896) (observing that injury must be "natural, probable, or foreseeable" consequence of negligent conduct, rather than merely "remotely possible," and noting that "[r]esponsibility does not extend to every consequence which may possibly result from negligence"); *Dahlstrom v. Shrum*, 84 A.2d 289, 292 (Pa. 1951) ("The test of negligence is whether the wrongdoer could have anticipated and foreseen the likelihood of harm to the injured person, resulting from his act[.]" (citations omitted)); *Thornton v. Weaber*, 112 A.2d 344, 347 (Pa. 1955); *Metts v. Griglak*, 264 A.2d 684, 687 (Pa. 1970); *Farley v. Sley Sys. Garages, Inc.*, 144 A.2d 600, 602 (Pa. Super. Ct. 1958) ("Fundamentally tort law imposes responsibility only for the foreseeable consequences of a negligent act . . . ; responsibility is limited to those consequences which are reasonably foreseeable from the nature of the negligent act."); *Ford v. Jeffries*, 379 A.2d 111, 115 (Pa. Super. Ct. 1977) (observing that harm itself must be foreseeable rather than manner of how that harm occurred); *Zanine v. Gallagher*, 497 A.2d 1332, 1334 (Pa. Super. Ct. 1985) ("The law clearly states . . . that [a defendant] may be held liable only for those risks a person in his position could reasonably have foreseen."); *R.W. v. Manzek*, 838 A.2d 801, 808 (Pa. Super. Ct. 2003) ("The existence of a special relationship . . . does not negate the requirement that the harm is foreseeable."), *rev'd on other grounds*, 888 A.2d 740 (Pa. 2005) (finding that plaintiff had properly alleged negligence and foreseeable harm); *Charlie v. Erie Ins. Exchange*, 100 A.3d 244, 250 (Pa. Super. Ct. 2014) ("The test of negligence is whether the wrongdoer could have anticipated and foreseen the likelihood of harm to the injured person, resulting from his act[.]" (citation omitted)).

9

ICE custody—in the summer month of July—in a T-shirt, shorts, and shoes would be negligent conduct that breaches a duty of care owed to the inmate. Rana relies on various BOP Program Statements to establish the standard of care, but those policies only require appropriate release attire.[36] Rana has simply failed to plausibly allege why his release clothing was improper or inadequate when considering the date of his release and the climate of his place of release, as well as the fact that he was released into ICE custody.

Relatedly, he has not alleged how BOP officials involved with the release of prisoners would know that releasing Rana in summer-weather attire (in the middle of the summer) would cause him "embarrassment, humiliation, degradation, and psychological distress." After all, such attire generally is normal and socially acceptable for male individuals in the summer in central Pennsylvania.

Rana claims that he was "exposed and indecent" upon his release,[37] but he does not explain why this is so or how it would have been reasonably foreseeable to the relevant BOP officials. He does not allege, for example, that his religion compels him to wear "full-length pants and shirt" and that, somehow, BOP officials knew or should have known that releasing him in shorts and a T-shirt rather than full-length clothing would cause him emotional distress (let alone such severe distress that it would manifest in bodily injury).

---

[36]   *See* Doc. 1 ¶¶ 60-66.
[37]   *Id.* ¶¶ 70, 71.

10

Lastly, Rana does not plausibly allege that the duty of care purportedly violated was one that was "designed to protect another from a fright or other emotional disturbance which the actor should recognize as involving an unreasonable risk of bodily harm[.]"[38]  Rather, the duty of care regarding proper release attire—as Rana himself acknowledges in his complaint—appears to be designed to protect inmates against exposure to harsh climate or weather in improper clothing.  As Rana avers, certain BOP policies require the inmate to be given "weather-appropriate clothing" that is proper "for the time of year and the inmate's geological destination" and its "climate."[39]  Thus, the duty of care appears to be one that was designed to protect the inmate from exposure to "the climate of the destination,"[40] not severe emotional distress from "embarrassment and humiliation."

Finally, the Court would be remiss if it did not note that Rana's FTCA complaint, as it currently stands and when drawing upon judicial experience and common sense, does not plausibly give rise to entitlement to relief.[41]  Rana's allegation that he was released from FCI Allenwood in July in a T-shirt, shorts, and

---

[38]  RESTATEMENT (SECOND) OF TORTS § 436(1).

[39]  Doc. 1 ¶¶ 54, 55 (quoting BOP Program Statement 5873.06 § 8 pp. 5-6; BOP Program Statement 5800.18 § 306 pp. 25-26, respectively).

[40]  *Id.* ¶ 55.

[41]  *See Iqbal*, 556 U.S. at 681.

11

shoes simply does not plausibly allege or imply negligent conduct.  Rather, it is the type of frivolous claim that must be dismissed under 28 U.S.C. § 1915(e)(2)(B)(i).

### C.      Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[42]  Because Rana is proceeding *pro se*, the Court will grant him leave to file an amended complaint in accordance with this Memorandum.  Although unlikely, it is possible that he could aver additional facts under the constraints of Federal Rule of Civil Procedure 11(b) that would plausibly state a claim for relief.

Alternatively, Rana may opt to stand on his current pleadings.  If Rana chooses this option, he must promptly indicate in writing that he is choosing to stand on his complaint as filed and the Court will then enter a final order of dismissal under 28 U.S.C. § 1915(e)(2)(B).[43]

## IV.    CONCLUSION

Based on the foregoing, the Court will dismiss Rana's FCTA complaint for failure to state a claim for relief and as legally frivolous.  Rana may file an

---

[42]   *Grayson*, 293 F.3d at 114.
[43]   *See Weber v. McGrogan*, 939 F.3d 232, 241 (3d Cir. 2019).

amended complaint in accordance with this Memorandum or he may choose to stand on his initial pleading.  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge